# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

51382 GRATIOT AVENUE HOLDINGS, LLC,

    Plaintiff/Counter-Defendant,

v.                                                            Case No. 2:11-cv-12047

CHESTERFIELD DEVELOPMENT COMPANY, LLC and JOHN DAMICO,

    Defendants/Counter-Plaintiffs,

v.

MORGAN STANLEY CAPITAL, INC.,

    Third-Party Defendant.
                                              /

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S "MOTION TO DISGORGE RETAINER DEPOSITED WITH DEFENDANT'S COUNSEL"**

    Before the court is Plaintiff's "Motion to Disgorge Retainer Deposited with Defendant's Counsel." The court has reviewed the motion and determined that a hearing on the matter is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the following reasons, the court will grant in part and deny in part Plaintiff's motion.

## I. BACKGROUND

    On April 13, 2005, Defendant Chesterfield Development Co. ("Chesterfield") obtained a $17,000,000 loan from Plaintiff's predecessor-in-interest, Third-Party Defendant Morgan Stanley Capital, Inc. ("Morgan Stanley"). (Consolidated Findings of Fact ¶ 2.) To secure the loan, Chesterfield mortgaged its commercial property at the corner of Gratiot Avenue and 23 Mile Road in Chesterfield Township, Michigan (the

"Real Property"). The mortgage included "a present, absolute assignment" of the leases and rents for the Real Property to Morgan Stanley. (Am. Compl. Ex. C, § 2.1; *see also id.* Ex. B, § 1.2.) Chesterfield defaulted on the loan in December 2009. (Consolidated Findings of Fact ¶¶ 10-12, 15.) On April 9, 2010, Plaintiff sent Chesterfield a notice of default demanding payment in full of the amount due on the loan and revoking Chesterfield's license to collect rents and other income from the operation of the Real Property. (*Id.* ¶ 17.) Chesterfield did not pay the amount due and continued to collect rents. (*Id.* ¶¶ 13-14.)

In June 2010, A&P, a tenant at the Real Property, defaulted on its lease. On August 10, 2010, Chesterfield paid an initial retainer of $35,000 to the law firm of Maddin, Hauser, Wartell, Roth & Heller, P.C. ("Maddin Hauser") to bring suit against A&P and recover the amount owed under the lease. (Defs.' Resp. Mot. Disgorge 7.) The ensuing litigation proved more contentious than initially envisioned, and, at Maddin Hauser's request, Chesterfield paid an additional retainer of $50,000 on December 17, 2010. (*Id.* at 8.) Eventually, A&P filed for bankruptcy, and Maddin Hauser continued to pursue the claim in bankruptcy court.

Plaintiff recorded a Statutory Notice of Default on January 4, 2011. (Consolidated Findings of Fact ¶ 18.) On April 1, 2011, Plaintiff foreclosed its mortgage, and the Real Property was sold to Plaintiff at public auction. (*Id.* ¶¶ 19-21.) Plaintiff then filed this suit against Defendants to recover the $12,240,108.64 deficiency on the loan following the foreclosure sale. (*Id.* ¶ 25.)

On May 10, 2011, the same day Plaintiff initiated this action, it also filed a motion asking the court to appoint a receiver to manage the Real Property during the six-month

statutory redemption period in which Chesterfield remained in possession. The court did so by a stipulated order (the "Receivership Order") entered on June 10, 2011 (the "Effective Date"). The Receivership Order provides that, as of the Effective Date, the "Receiver is authorized and directed to take immediate possession and full control of the Receivership Property," which includes "[a]ll Income." (6/10/11 Order ¶¶ 1.2-1.3.) The Receivership Order defines "Income" as, in relevant part,

> all cash, cash on hand, checks, cash equivalents, credit card receipts, demand deposit accounts, bank accounts, cash management or other financial accounts, bank or other deposits, and all other cash collateral . . . derived with respect to the Real Property or business operations at the Real Property, regardless of whether earned before or after entry of this Order[,] . . . [including] all Income that was not . . . used for ordinary and necessary business expense, regardless of whether the Income was received on or after the filing of the Statutory Notice of Default.

(*Id.* ¶ 1.6.) Under the Receivership Order, the "Receiver shall take possession of and receive from all depositories, banks, brokerages, and otherwise (collectively, "Financial Institutions"), any money on deposit in all such Financial Institutions relating to or arising from the operation of the Receivership Property." (*Id.* ¶ 1.4.) Further, the Receivership Order enjoined "[Chesterfield], all property managers, and all those acting in concert or cooperation with them who receive notice of this Order, and all those having claims against the Receivership Property who receive notice of this Order" from "demand[ing], collect[ing], receiv[ing], discount[ing], or in any other way divert[ing] or us[ing] any of the Income." (*Id.* ¶ 13.4.)

Plaintiff filed the instant "Motion to Disgorge Retainer Deposited with Defendant's Counsel" on July 11, 2011, requesting that the court order Maddin Hauser to turn over to the Receiver the entire $85,000 deposited by Chesterfield in August and December

of 2010. In their response, Defendants indicated that, as of the date Plaintiff filed the motion to disgorge, only $44,470.13 of the initial retainer was still held on account for Chesterfield. (Defs.' Resp. Mot. Disgorge 9.) Of the remainder, $26,542.12 had been applied to legal fees incurred in the A&P litigation while $13,987.75 had been applied to legal fees incurred in defending the present suit. (*Id.* at 15 n.10.) In a telephone conference held on September 9, 2011, the parties informed the court that they had resolved this dispute except for the $13,987.75 in legal fees applied to this case.

## II.  STANDARD

Federal Rule of Civil Procedure 66 provides that "[t]hese rules govern an action in which the appointment of a receiver is sought . . . . But the practice in administering an estate by a receiver . . . must accord with the historical practice in federal courts or with a local rule." Fed. R. Civ. P. 66.[1]  "'[A] district court's power to supervise an equity

---

[1] Rule 66's pronouncement that "the practice in administering an estate by a receiver . . . must accord with the historical practice in federal courts or with a local rule" has prompted a divergence in opinion as to whether federal or state law governs a district court's administration of a receivership. *Compare Can. Life Assurance Co. v. LaPeter*, 563 F.3d 837, 842 (9th Cir. 2009) ("Not only does Rule 66 require application of the federal rules in an action where the appointment of a receiver is sought, it specifically indicates a normative standard for uniform administration of receiverships in accordance 'with the historical practice of federal courts.'" (quoting Fed. R. Civ. P. 66)), *and* 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2983 (2d ed. 1987) (noting that "the receiver's title to and possession of receivership property" and "his powers and discretion with regard to the management and disposition of the property" are matters "governed by federal law in accordance with the practice 'heretofore followed in the courts of the United States or as provided in rules promulgated by the district courts'" (quoting Fed. R. Civ. P. 66)), *with Resolution Trust Corp. v. Fountain Circle Assocs. Ltd. P'ship*, 799 F. Supp. 48, 50 (N.D. Ohio 1992) (relying on the Advisory Committee's Note to Rule 66 in concluding that "Congress has specifically provided that a Federal Equity Receiver, once appointed, is to manage and operate the property according to the laws of the state where the property is located"), *and* Emil R. Berg, Annotation, *Law Governing Appointment of Receiver in Federal Diversity Action*, 44 A.L.R. Fed. 2d 241 (2010) ("[O]nce the receiver has been

receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad.'" *SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005) (alteration in original) (quoting *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986)); *see also Quilling v. Trade Partners, Inc.*, 572 F.3d 293, 298 (6th Cir. 2009) ("In a receivership proceeding, the district court has 'broad powers and wide discretion' in crafting relief." (quoting *SEC v. Basic Energy & Affiliated Res., Inc.*, 273 F.3d 657, 668 (6th Cir. 2001))).

### III.  DISCUSSION

The parties now agree that the unapplied portion of the retainer qualifies as "Receivership Property" under the Receivership Order, while the funds applied to the A&P litigation were "used for ordinary and necessary business expense" and were not "Receivership Property."  (6/10/11 Order ¶¶ 1.2, 1.6; *see also* Pl.'s Reply Mot. Disgorge i-ii.)  As a result and at the parties' request, the court will limit its analysis to the Receiver's right to possess the $13,987.75 applied to this litigation as of the filing of Plaintiff's motion.

In accordance with the parties' agreement, any portion of the retainer that remained unapplied on the Effective Date of the Receivership Order constituted "cash," "cash equivalent[]," a "financial account[]," a "bank or other deposit[]," or "cash collateral" within the Receivership Order's definition of "Income."  (6/10/11 Order ¶ 1.6.)  Thus, the unapplied portion of the retainer was "Receivership Property" and, as of the

---

appointed, state law governs the 'actual administration of the receivership estate itself.'" (quoting Fed. R. Civ. P. 66, Advisory Comm. Note)).  Because both federal and Michigan authorities support the court's determination of the Receiver's right to possess the portion of the retainer in dispute, it is unnecessary to determine which law controls.

Effective Date, the Receiver was "authorized and directed to take immediate possession and full control" of it. (*Id.* at ¶¶ 1.2-1.3.)  *See Gaskill v. Gordon*, No. 88 C 3404, 1988 WL 102077 (N.D. Ill. Sept. 28, 1988) (determining that legal retainer held by defendants' law firm was defendants' property subject to turn over to receiver "authorized to acquire most of the property belonging to entities owned by the defendants").  Further, the funds held by Maddin Hauser on account for Chesterfield fell within the Receiver's power to "take possession of and receive from all depositories, banks, brokerages, and otherwise (collectively, "Financial Institutions"), any money on deposit in all such Financial Institutions relating to or arising from the operation of the Receivership Property." (6/10/11 Order ¶ 1.4.)   Maddin Hauser should not have applied funds from the retainer after the Effective Date, and doing so violated the Receivership Order's mandate that "[Chesterfield], all property managers, and all those acting in concert or cooperation with them who receive notice of this Order, and all those having claims against the Receivership Property who receive notice of this Order" refrain from "demand[ing], collect[ing], receiv[ing], discount[ing], or in any other way divert[ing] or us[ing] any of the Income."  (*Id.* ¶ 13.4.)

Therefore, Maddin Hauser must turn over to the Receiver any portion of the $13,987.75 that was applied to the defense of this suit after June 10, 2011.  Defendants attempt to refute this conclusion by asserting that legal fees incurred in this action are "ordinary and necessary business expense[s]" outside the Receivership Order's definition of "Income."  (*See id.* ¶ 1.6.)  This argument is unavailing.[2]  "Income" as

---

[2]So, too, is Defendants' summary assertion that Plaintiff cannot bring this motion because it "is not the receiver, and has no right to exercise the receiver's authority

defined in the Receivership Order includes only "income derived with respect to the Real Property or business operations at the Real Property." (*Id.*) Similarly, the definition's limitation to "Income that was not . . . used for ordinary and necessary business expense" must be restricted to "ordinary and necessary business expense" of the Real Property or its business operations. (*Id.*) Defendants' indebtedness to Plaintiff under the loan agreement does not concern the operation or management of the Real Property, so Defendants cannot finance their defense of this litigation with Income from the Real Property. *Cf. In re Willowood E. Apartments of Indianapolis II, Ltd.*, 114 B.R. 138, 145 (Bankr. S.D. Ohio 1990) (holding that debtor was not entitled to use net rents from foreclosed property to pay legal expenses of filing and prosecuting bankruptcy suit, as such expenses are not "ordinary operating expenses" exempt from debtor's assignment of rents to mortgagee).[3]

On the other hand, Plaintiff has shown no basis for disgorging fees already paid out of the retainer before the Receivership Order came into effect. It is settled law that

---

under the Receiver Order." (Defs.' Resp. Mot. Disgorge 16.) "[A] primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors. . . . Reasonable adminstrative [sic] procedures, crafted to deal with the complex circumstances of each case, will be upheld." *Hardy*, 803 F.2d at 1038.

[3]Defendants are correct that bankruptcy cases are not strictly controlling in the context of equity receiverships, insofar as such decisions are based on provisions of the Bankruptcy Code. *Johnson v. Studholme*, 619 F. Supp. 1347, 1348-49 (D. Colo. 1985). The court nevertheless finds *Willowood* instructive, as the operative holding involves the court's interpretation of a mortgage and assignment agreement with language similar to the Receivership Order. *See* 114 B.R. at 143 ("[O]nly the portion of the Rents remaining after payment of operating costs and other expenses related to the Property would be applied to the Debtor's obligation under the Promissory Note as secured by the Mortgage and Assignment.").

a receiver's right to possession dates from the time of his appointment. *See, e.g., Davis v. Cox*, 356 F.3d 76, 93 (1st Cir. 2004) (construing Maine law); *Wells v. Cermak (In re Ackermann)*, 82 F.2d 971, 972 (6th Cir. 1936); *Saginaw Cnty. Sav. Bank v. Duffield*, 122 N.W. 186, 188-89 (Mich. 1909). Any fees that had been paid out of the retainer to Maddin Hauser prior to the Effective Date were no longer "cash," "cash equivalents," "financial accounts," "bank or other deposits," or "cash collateral" attributable to the Real Property. (6/10/11 Order ¶ 1.6.) Rather, those fees had become the property of Maddin Hauser. Plaintiff provides no authority, and the court sees no basis, to depart from the general rule that funds disbursed before the court entered the Receivership Order are not "Receivership Property." *See Gaskill*, 1988 WL 102077, at *1.

Plaintiff also claims that the $13,987.75 in fees should be disgorged from Maddin Hauser because Chesterfield funded the retainer out of rents it collected in violation of loan agreement's assignment of rents. That is, Plaintiff argues that, as of Chesterfield's default on the loan in December 2009, Chesterfield's "revocable license" to collect rents from lessees of the Real Property expired, and all rents collected after that date belong to Plaintiff and should not have been used for purposes other than operating and managing the Real Property. (*See* Am. Compl. Ex. C, § 2.1; *see also id.* Ex. B, § 1.2.) However, even assuming that a violation of the assignment of rents by Chesterfield would justify disgorging fees paid to Maddin Hauser, the assignment did not become valid under Michigan law until Plaintiff recorded the Statutory Notice of Default on January 4, 2011. *See* Mich. Comp. Laws §§ 554.231-.232; *In re Mount Pleasant Ltd. P'ship*, 144 B.R. 727, 732-33 (Bankr. W.D. Mich. 1992). Because Chesterfield paid the retainer to Maddin Hauser in August and December of 2010, that payment could only

have included rents collected before the assignment became effective.  Therefore, neither the assignment of rents nor the Receivership Order provide grounds to disgorge any portion of the $13,987.75 fee applied prior to June 10, 2011.

### IV.  CONCLUSION

For the reasons stated above, IT IS ORDERED that Plaintiff's "Motion to Disgorge Retainer Deposited with Defendant's Counsel" [Dkt. # 38] is GRANTED IN PART and DENIED IN PART.  It is GRANTED with respect to Plaintiff's request that Maddin Hauser turn over to the Receiver any portion of the $13,987.75 in legal fees for the defense of this suit that was applied from Chesterfield's retainer after entry of the Receivership Order on June 10, 2011.  It is DENIED with respect to Plaintiff's request that Maddin Hauser turn over any funds applied from Chesterfield's retainer prior to that date.

IT IS FURTHER ORDERED that, by **October 21, 2011**, Defendants shall provide an accounting of the dates on which legal fees for the defense of this suit were applied from Chesterfield's retainer and shall turn over to the Receiver any such fees paid after June 10, 2011.

      s/Robert H. Cleland  
      ROBERT H. CLELAND  
      UNITED STATES DISTRICT JUDGE

Dated:  October 5, 2011

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 5, 2011, by electronic and/or ordinary mail.

      s/Lisa Wagner  
      Case Manager and Deputy Clerk  
      (313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\11-12047.51382GRATIOTAVEHOLDINGS.MotDisgorgeRetainer.set.wpd